(No. 6684. January 19, 1940.)

COMMERCIAL CASUALTY INSURANCE COMPANY, Appellant, v. BOISE CITY NATIONAL BANK and ROSCOE S. MADDEN, as Receiver of Said Bank, Respondents.

[98 Pac. (2d) 637.]

126

Martin & Martin and T. D. Jones, for Appellant.

J. R. Smead and Karl Paine, for Respondents.

128

MORGAN, J.—The record discloses the following facts: Boise City National Bank, hereinafter called the bank, is and, at all times mentioned in the evidence, was a national banking association and, until August 1, 1932, was engaged in the banking business in Boise City, Idaho. Boise City, hereinafter called the city, is and, during all times mentioned in the record, has been a municipal corporation, situated in Ada County, Idaho. Commercial Casualty Insurance Company, hereinafter called appellant, is and, during said times has been a foreign corporation, qualified to do business in Idaho and was engaged in the business of writing surety and fidelity bonds, including bonds for banks to secure the deposit therein of public funds.

Prior to July 8, 1931, the bank applied to the city to be designated a depository for its public funds and was so designated, subject to giving bond to secure the repayment of the deposits, as required by the laws of Idaho regulating the deposit of public funds in banks. (I. C. A., Tit. 55, Chap. 1.) July 8, 1931, the bank, as principal, and appellant, as surety, executed a bond in favor of the city in the penal sum of $50,-000, conditioned to secure the safekeeping and repayment of public funds of the city deposited in the bank. The bond was delivered to and approved by the auditor of Ada County, as required by law. (I. C. A., sec. 55-119.) Thereupon the city began depositing its funds in the bank and at all times there-

after continued to deposit, and to keep on deposit, various sums of its money, so long as the bank remained open for business.

November 8, 1931, there was executed a document, referred to in the record as "an endorsement," in words and figures as follows:

"LOYALTY GROUP LOYALTY GROUP
 Number 220269
 ENDORSEMENT

"IN CONSIDERATION OF A REDUCTION IN PRE-MIUM, it is hereby stipulated and agreed by and between the COMMERCIAL CASUALTY INSURANCE COMPANY and the Treasurer of the City of Boise, Idaho, that effective November 8th, 1931, that certain bond No. 220269 on behalf of the BOISE CITY NATIONAL BANK, Boise, Idaho, and in favor of the City of Boise, Idaho, effective on the 8th day of July, 1931, in the penalty of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) shall be and is hereby decreased to the penalty of TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00); but in no event shall the aggregate liability of the COMMERCIAL CASUALTY INSURANCE COMPANY for any one or more losses occurring prior to the 8th day of November, 1931, exceed FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or for any one or more losses occurring subsequent to the 8th day of November, 1931, exceed TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), or in any event exceed the larger amount stated herein.

Return premium $84.24

"Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.

"Attached to and forming part of BOND NO 220269 dated July 8, 1931 issued by the Commercial Casualty Insurance Company, Newark, New Jersey, to BOISE CITY NA-TIONAL BANK

"The conditions of the above endorsement are hereby accepted this 8th day of November, 1931.

BOISE CITY NA- CITY OF BOISE,
TIONAL BANK IDAHO
By CHAS. A. MC- By S. M. STEWART, W. VANWINKLE,
 LEAN Treas. Vice-President

"Countersigned at San Francisco, Calif. this 31st day of October, 1931.

 "J. A. BROPHE
 "Attorney in Fact.

Cas. Gen. 5670 50M-11-30-7270L N78
LOYALTY GROUP LOYALTY GROUP"

On the dates hereafter named, in order to further secure repayment to the city of its deposits, the bank placed in trust in First Security Bank of Boise, which was duly qualified and had been designated to receive and hold the same, the following securities, property of the bank, respondent herein:

July 12, 1932...Boise City Warrants...par value...........$10,107.72
July 20, 1932...Boise City Warrants...par value........... 4,525.30
July 23, 1932...Gold Debentures of Pennsylvania Railroad..
 . Co....par value....................... 10,000.00
July 25, 1932...German Government International Loan
 Bonds...par value ..................... 10,000.00
July 28, 1932...United States Treasury Bonds...par value.. 2,000.00

First Security Bank issued its trust receipts for said warrants and bonds, as required by law (sec. 55–119), and delivered said receipts to the county auditor of Ada county.

August 1, 1932, the bank, by order of its board of directors, ceased doing business and, shortly thereafter, the Comptroller of the Currency of the United States of America took charge of its affairs and since has maintained charge thereof. August 9, 1932, J. L. Eckerson was appointed receiver of the bank by the comptroller of the currency and continued in such capacity, engaged in winding up its affairs, until August 10, 1935, when he resigned and respondent, Roscoe S. Madden, was appointed. He since has been and now is, receiver of the bank and has continued to discharge the duties of winding up its affairs under direction of the comptroller of the currency.

On the date the bank suspended business the city had on deposit therein its public funds amounting to $53,725.24, the repayment of which was secured by the bond above mentioned and by securities, property of the bank, as heretofore stated. October 1, 1932, the city demanded of appellant, as surety on said bond, payment of the penal sum thereof. January 10, 1933, appellant, without knowledge that the bank had further secured the city's deposits with warrants and bonds, paid to the city $25,000, which was credited on and applied toward the payment of the amount owing from the bank to the city on account of the deposit of its public funds.

January 28, 1933, the city filed its claim with the receiver for the total amount of its deposit, together with interest thereon, and the claim was approved by the receiver and the comptroller of the currency, subject to a reduction of $25,000, paid to the city by appellant. April 29, 1933, the receiver, as authorized to do by the comptroller of the currency, caused to be delivered to the city its warrants, theretofore placed in trust in First Security Bank, of the value of $14,633.02, which amount was credited, as payment to the city, on its deposit of public funds. March 1, 1934, the bonds pledged by the bank to secure the city's deposit were sold and from the proceeds thereof $14,092.22, being the amount remaining due to the city from the bank as principal of its deposit was, March 7, 1934, paid to it by the receiver. June 4, 1934, he paid to the city $553.66, interest on its deposit, due according to its contract with the bank, leaving $1,920.74 in the hands of the receiver arising from the sale of bonds pledged by the bank to secure the repayment to the city of its deposit.

After its claim was paid in full, by appellant and the receiver of the bank, the city executed and delivered to appellant an assignment of its right to any moneys to arise out of the claim which it had filed with the receiver.

Appellant made claim against the bank, dated August 3, 1935, for $25,000, reserving therein the right to file additional claims,

"or to bring suits or actions, if necessary, to enforce the collection of the same against the Boise City National Bank and its receiver thereof, J. L. Eckerson, for the balance which it

claims to be due it as assignee under the claim of Boise City filed against said bank with the receiver, on or about January 28, 1933, and the preference claimed by said bank and especially upon the securities and the proceeds thereof as claimed, set forth, and described in said claim of Boise City, the balance of the proceeds of the sale of said securities now in the hands of the receiver, being $1,920.74.

"The Commercial Casualty Insurance Company by filing this claim does not waive its right to present and collect its said claim in any manner which it may legally pursue, but reserves to itself all rights in connection therewith."

At the time of the trial of the action in the district court appellant had received dividends on its claim, from the receiver of the bank, amounting to $15,833.33.

Appellant commenced this action against respondents, praying in the complaint that it be subrogated to the rights of the city to receive dividends on its claim after the application of the city warrants toward the payment thereof; that the receiver be required to pay to appellant funds in his hands, being the balance derived from the sale of bonds pledged to secure the payment of the city's deposits, together with interest thereon; that appellant recover from respondents $4,-206.26, which it paid to the city in excess of its *pro rata* share, together with interest from date of payment; that the receiver be required to pay to appellant all dividends to be declared on the city's claim until appellant shall have received, from all sources heretofore paid and to be paid, the sum of $25,000, together with interest, and for its costs and disbursements in the action.

September 17, 1937, respondents answered and cross-complained, seeking judgment against appellant for $9,223, alleged to have been paid to the city, by the receiver, through mistake, in excess of the proportionate part of the city's claim chargeable to the bonds deposited by the bank to secure repayment of the city's deposits. Appellant answered the cross-complaint alleging, among other things, that respondents' cause of action, if any they had, was barred by the provisions of secs. 5–217 and 5–218.

The trial judge held the assignment of the city to plaintiff, made June 24, 1935, transferred no right or claim against the bank in addition to, or other than, the rights theretofore acquired by plaintiff by reason of the payment made to the city, on the bond; that when the city was paid in full plaintiff became subrogated, as a general creditor, to its rights to dividends to the extent of $25,000, and no more, and that the receiver is not required to pay plaintiff any dividends, other than on $25,000 as a general creditor. The judge also held that defendants' cause of action, stated in their cross-complaint, was barred by section 5–218, subdivisions 1 and 4. The judgment entered is that plaintiff recover nothing in the action; that defendants recover nothing on their cross-complaint, and that they recover from plaintiff their costs and disbursements incurred. Plaintiff appealed from the judgment and defendants cross-appealed from that portion of it awarding them nothing on their cross-complaint.

 Appellant's contention that it is entitled to recover the moneys remaining in the hands of the receiver, arising from the sale of bonds, after the city had been paid in full, cannot be sustained. The right to that money is fixed by sec. 55–121, which provides for the sale of bonds pledged by banks to secure the repayment of public money therein. It contains this provision:

"Should there be any surplus after paying the amount due the depositing unit, and expenses of sale, it shall be paid over to the bank making the deposit."

██ Another question, answer to which is necessary in disposing of appellant's appeal, is: Had the $50,000 bond, executed by appellant, been reduced to $25,000, or did it remain in full force and effect for the amount in which it was originally given? Section 55–112 requires banks, before receiving public funds on deposit, to deposit securities or give bonds for the repayment of such funds and the interest thereon. That section contains this provision:

"When both securities and bonds are given as security under the provisions hereof, each class shall be held to contribute its ratable proportion of any loss which the depositing unit may suffer or of any recovery to which it may become entitled."

If appellant's obligation was $50,000, it has not paid its ratable proportion of the city's deposit in the bank, to repayment of which it was entitled. If the bond was reduced to $25,000, the payment of that amount of money to the city, which appellant made, discharged its obligation in full.

Section 55–112 made it the duty of the Auditor of Ada County to require the bank, before receiving deposits of the city's money, to deposit securities or give bonds, or both, to secure its repayment. Section 55–119 provides:

"Immediately after the acceptance by the county auditor of bonds or securities, or the withdrawal of securities or withdrawal from any bond, the county auditor shall fix the maximum sum which may then be deposited and shall in writing notify the treasurer of the depositing unit whose deposits are hereby secured, of the maximum sum which the said treasurer may keep on deposit in said depository."

In addition to the duty to designate the bank in which the city's funds should be deposited, sec. 55–117 made it the duty of the supervising board (being the mayor and council) to investigate the bond given to secure the city's deposit, the acts of the county auditor in relation thereto, and the sufficiency of the surety on the bond, given to secure the deposits of its public funds, at least twice a year. That section further provides:

"The supervising board may cause an investigation to be made at any time to ascertain the sufficiency of any bond or security offered or given under this law or of any act of the auditor hereunder, and to require new or additional security or bond, whenever in its judgment the safety of any deposit of public moneys under this law requires it. And whenever any such depository shall fail to give any such new or additional security, or bond, as may be required by such supervising board, and within the time and in the manner fixed by it, it shall be the duty of the supervising board and auditor to notify in writing the treasurer of such default and of the maximum sum which the said treasurer may keep on deposit in said depository and shall fix the time within which said treasurer shall withdraw from said depository any public moneys in excess of such maximum and thereupon such treasurer shall withdraw public moneys in such depository in ex-

cess of such sum, and in accordance with said written directions. The failure or refusal on the part of any member of the supervising board to investigate the sufficiency of the bonds deposited under the provisions of this act, and the sufficiency of the sureties thereon and the sufficiency of the securities deposited under this chapter, and the acts of the county auditor in relation to the same, and to fix a maximum deposit limit as provided by this chapter, at least twice a year, shall be deemed a misdemeanor.''

 Pursuant to the laws of Idaho, providing for the deposit and safekeeping of public funds, the $50,000 bond was executed and delivered into the custody of the county auditor. He fixed the maximum sum which might be deposited as secured by the bond at 90 per cent of the face thereof and, thereafter, it was so understood and considered by him, and he so reported to the city. The so-called ''endorsement'' was not attached to the bond; the city treasurer had no authority to execute it, and neither the county auditor nor the mayor and council of the city had any knowledge of the attempted reduction of the penal sum of the bond until after the bank failed. There is no statutory authority for making the change as attempted to be made in the bond. Our statute, sec. 55–122, does provide for the withdrawal of sureties, upon giving notice as therein required, but it does not authorize changing the obligation of the bond itself. This attempted reduction of the bond from $50,000 to $25,000 was without authority of law, in violation of the public policy of Idaho with respect to deposit and safekeeping of public funds, and is void. The bond in the penal sum of $50,000 remains in full force and effect.

 Appellant contends it is entitled to be subrogated to the rights and priorities of payment which the city would have been entitled to if its deposits had not been repaid. That position is made untenable by the portion of sec. 55–112, heretofore quoted. To sustain the contention that appellant is entitled to subrogation would nullify the statute requiring each class of securities to contribute its ratable proportion of any loss which the depositing unit may suffer, or of any recovery to which it may become entitled, in case

both securities and bonds are given to secure the payment of deposits.

The ruling on the demurrer to the cross-complaint makes consideration of sec. 5–214, and of subsecs. 1 and 4 of sec. 5–218, our three-year statute of limitations, necessary. They are:

''5–214. The periods prescribed for the commencement of actions other than for the recovery of real property are as follows.''

''5–218. [1.] An action upon a liability created by statute, other than a penalty or forfeiture.

'' . . . .

''[4.] An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.''

Subsection 1 has no application to the facts of this case. The cause of action stated in the cross-complaint is based on an alleged mistake of the receiver in paying $9,223 to the city which should have been paid by appellant; that through mistake there had been paid from the balance of proceeds of sale of securities, pledged by the bank, $9,223 more than its proportionate share, and, by appellant, that amount less than its proportionate share of the city's deposit. This contention is dependent on the penalty of the bond being $50,000 instead of $25,000, as asserted by appellant.

The statute having made the date of discovery of the facts constituting the mistake the date on which the cause of action is deemed to have accrued, it is necessary to ascertain, if possible, from the record, when respondents came into possession of the facts which formed the basis of the legal conclusion that the attempted change in the bond was void and that the obligation thereof was $50,000 instead of $25,000. So far as the knowledge of the bank is concerned, the so-called ''endorsement,'' by means of which it was sought to reduce the amount of the bond to $25,000, was executed by one of its executive officers, on its behalf, November 8, 1931. Receiver Eckerson took charge of the bank's affairs, and its records, August 9, 1932, and December 12th, of that year he

wrote a letter to the comptroller of the currency, as shown by exhibit 23 in evidence, from which it appears he was familiar with the facts constituting the effort made to reduce the amount of the penalty of the bond, and had a copy of the "endorsement" in his possession. The last payment was made to the city, by the receiver, June 4, 1934, and the cross-complaint was filed September 17, 1937, more than three years after respondents discovered the facts constituting the mistake, if there was one. The cause of action, stated in the cross-complaint, is barred by sec. 5–218, subsec. 4.

 Appellant complains of the action of the trial court in awarding costs to respondents, on the ground that while appellant recovered nothing by its complaint, respondents recovered nothing by their cross-complaint. The sections of the code applicable to this phase of the case are secs. 12–102 and 12–104. The pertinent part of sec. 12–102 is as follows:

"Costs are allowed of course to plaintiff upon a judgment in his favor in the following cases . . . .

"3. In an action for the recovery of money or damages when the plaintiff recovers $100 or over."

Section 12–104 provides:

"Costs must be allowed, of course, to the defendant upon a judgment in his favor in the actions mentioned in section 12–102, and in special proceedings."

██ While respondents were not entitled to recover costs incurred by them in seeking to establish their cross-complaint, there is nothing in the record to show either party expended any money in litigating the issues presented by it. In absence of a showing that appellant incurred costs in defending against the cross-complaint, we cannot say failure to allow judgment for them was error.

The judgment is affirmed. Costs on appeal are awarded to respondents.

Ailshie, C. J., and Givens and Holden, JJ., concur.

Budge, J., took no part in the decision.